## JOHN B. WELCH

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS, on the relation of GEORGE W. BYRNS, *et al.*

1. INJUNCTIONS—*when granted by a Circuit Judge, extent of their operation.* A Circuit judge has power to grant injunctions to operate throughout the State.

2. SAME—*of the power to grant them after another Judge has refused.* Where one Circuit judge has refused an application for the writ, and endorsed his refusal upon the bill, it is a question of courtesy, merely, with another Circuit judge to whom application may be made, whether he will look into the case, and allow the writ. His power to allow it cannot be questioned, under the statute. He is not to be controlled in his decision upon the application, by the opinion of any other judge, but must decide for himself, upon the merits of the case as presented to him.

3. SAME—*of the power of another judge to vacate an order allowing the writ.* And where the writ has been allowed by another Circuit judge after it has been refused by the judge of the circuit in which the suit was brought, even the latter judge has no power, in vacation, and of his own mere motion, to vacate the order awarding the writ.

4. The effect of the order can be avoided only in the mode pointed out in the statute, by motion in term time for a dissolution of the injunction.

5. SAME—*power of the judge of the 20th judicial circuit in that regard.* Nor

does the act of 1857, creating the twentieth judicial circuit, confer upon the judge of that circuit the power to vacate such an order in the manner indicated.

6. SAME—*remedy, when the clerk refuses to issue the writ upon the order allowing it.* When the judge of one circuit has awarded an injunction which is to operate and must be issued in another circuit, the only power which the judge awarding the writ has to compel the clerk to issue it, is, to punish him for a contempt in refusing to do so, and to hold him in custody until he shall comply with the order.

7. MANDAMUS—JURISDICTION.   To compel the clerk by mandamus, under such circumstances, resort to the Supreme Court would be necessary, or to the court of which he was clerk.

8. The act relating to mandamus does not authorize the Circuit Courts to issue that writ to operate beyond the limits of the respective circuits.

9. JURISDICTION—*cannot be acquired by consent.*   Nor could the Circuit Court of one circuit acquire jurisdiction to issue a writ of mandamus to operate within the limits of another circuit, even by consent of parties

APPEAL from the Circuit Court of Winnebago County; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was an application to the court below for a writ of mandamus, in the name of the People of the State of Illinois, on the relation of George W. Byrns, Michael J. Hawkins, Robert B. Hawkins, Alanson Hawkins, Albert Hawkins, John Gilks, John Ingraham, Aaron Shrefler, Alpha B. Blair, John Michael, Joseph Jeffcoat and Andrew Yates, against John B. Welch, the clerk of the Circuit Court of Kankakee County, to compel him to issue a writ of injunction, which had been awarded by the Judge mentioned. The facts connected with the proceeding will be found in the opinion of the court.

Mr. H. LORING for the appellant

Mr. STEPHEN R. MOORE and Mr. THOMAS P. BONFIELD for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court :

The questions presented by this record are novel and important in their character and have received full consideration.

The facts agreed show, that on the first of February, 1865, the relators, presented, by their attorney, to the Judge of the 20th Judicial Circuit, their bill for an injunction against certain parties named therein to restrain them from doing certain things complained of in the bill, which bill was duly presented to the Judge at his chambers, in Kankakee City, who, after considering the application refused to grant the writ, and under his hand then and there made this endorsement on the bill:

"Feb. 1st, 1865,—injunction refused—C. R. Starr, Judge of the 20th Judicial Circuit, State of Illinois."

Afterwards, on the eighth day of the same month, the complainants in the bill by their attorneys, presented the same bill with the above endorsement upon it, to the Hon. B. R. Sheldon, Judge of the 14th Judicial Circuit, in open court, who allowed the writ, having knowledge of the refusal of Judge Starr and of his endorsement on the bill, and then and there endorsed on the bill a formal order to the Clerk of the Kankakee Circuit Court to issue a writ of injunction, as prayed for, on bond being executed, conditioned according to law, in the penalty of six thousand dollars.

Afterwards, on the ninth day of the same month of February, this bill with Judge Sheldon's order upon it, was duly filed in the office of the Clerk of the Kankakee Circuit Court, and bond filed as required by the Judge's order.

After the bill was filed and bond executed and filed, Judge Starr, Judge of the Kankakee Circuit Court, being in the office of the Clerk, on his own motion and without the knowledge of any of the parties to the bill or of their attorneys, made this endorsement under that of Judge Sheldon:

"STATE OF ILLINOIS, KANKAKEE COUNTY—SS:

"The above order for an injunction is hereby vacated and set aside.                    CHAS. R. STARR,
FEBRUARY 9, 1865.      Judge of 20th Judicial Circuit."

On the tenth of February, being the day following this order, Judge Starr filed in the office of the Clerk of the Kankakee Circuit Court, certain rules, signed by him, as follows:

" Orders by the Court of Chancery under section one of the chancery act, and section six of the act of February 7, 1857, creating the 20th Judicial Circuit, in open court in vacation after the December term, 1864:

" STATE OF ILLINOIS, KANKAKEE COUNTY—SS:

"*Order* 1*st.* It is hereby ordered by the court that the clerk of this court shall issue no writ of injunction upon the order of any judge out of this circuit, (except a judge of the Supreme Court) when it shall appear to said clerk, by an endorsement or otherwise, that the bill upon which said injunction is allowed has been passed upon by this court and injunction refused.

"*Order* 2*d.* As by law this court is always considered open for the hearing of all parties and applications on the chancery side thereof, and the granting of all such orders as may be required or necessary in the practice of this court, an order refusing an injunction is an order of court, and no judge not having appellate jurisdiction over this court, has any right to reverse its orders or annul its proceedings: It is therefore ordered that any order for an injunction by any judge not having appellate jurisdiction over this court, upon any bill which has been passed upon by this court and injunction refused, being, in effect, a reversal of the decision of this court, and an unwarrantable assumption of power, shall be held and treated as void and of no effect."

On the day before the entry of these orders, the complainants in the bill requested and demanded of the appellant, John B. Welch, the clerk of that court, a writ of injunction, in pursuance of Judge Sheldon's order, which the clerk refused to issue, alleging as reasons for such refusal that Judge Starr, in the first instance, had refused an injunction, and had so endorsed on the bill; and he further urged these orders or rules, filed in the office by Judge Starr, as above set forth.

On this refusal of the clerk, an application was made by the appellees, the relators, to the Winnebago Circuit Court, then holding its February term, for a writ of mandamus to compel appellant, as clerk of the Kankakee Circuit Court, to issue the writ of injunction on Judge Sheldon's order, and thereupon an order for a peremptory writ of mandamus against appellant, as clerk as aforesaid, was granted by the Winnebago Circuit Court.

From this order this appeal is taken, and it is stipulated that if the reason and cause given by appellant for refusing to issue the writ of injunction be valid and sufficient, then the order of the Winnebago Circuit Court granting the writ of mandamus is to be reversed, and if not held as a sufficient reason and excuse, then the same is to be affirmed.

This, we believe, is the substance of the stipulation as to the facts, upon which the parties agree, and the point upon which they desire the decision of this court shall turn. That point is confined solely to the excuse given by the clerk for refusing to issue the writ of injunction on Judge Sheldon's order.

There can seem to be no doubt of the power of a Circuit Judge to grant injunctions to operate throughout the State. The statute conferring the power is broad and comprehensive. "The Supreme and Circuit Courts in term time, and any Judge thereof in vacation, shall have power to grant writs of *ne exeat* and injunction." Scates' Comp. Ch. 62, Section 8, Page 146. There does not seem to be any limit to this power, and the practice under this statute, has been uniform so far as we know, for a Circuit Judge to grant injunctions to operate anywhere, in any Judicial Circuit of the State. When one Circuit Judge, as in this case, has refused an application for the writ, and endorsed his refusal upon the bill, it is a question of courtesy, merely, with another Circuit Judge to whom application may be made, whether he will look into the case, and allow the writ. His power to allow it, cannot, we think, be questioned, under the statute. He is not to be controlled in his decision upon the application, by the opinion of any other

Judge, but must decide for himself, upon the merits of the case as presented to him. It may be a matter of some delicacy for one Circuit Judge to overrule another Circuit Judge on an application for a writ of injunction, but that he has the power só to do, by granting the writ which another Judge has refused, cannot, we think, be denied, when the broad terms of the statute are considered.

The first reason given by the Clerk for his refusal to issue the writ, has no foundation in law. The refusal of Judge Starr to grant the writ could not control the action of Judge Sheldon, and therefore, the Clerk cannot shelter himself under the order of Judge Starr.

The second reason assigned by the Clerk for his refusal has no force. The application for the writ was made to him on the ninth day of February. The rules entered by Judge Starr were not entered until the following day, the tenth, consequently, they, not being in existence on the ninth, could afford no ground of refusal to do an act he was called upon to perform on the ninth. The power of Judge Sheldon being admitted, to award the writ of injunction, the reasons for refusing to issue it urged by the Clerk can have no force. Nor can the order of Judge Starr, vacating the order of Judge Sheldon, avail the Clerk as an excuse for disobeying that order, for the reason that Judge Starr had no power thus to vacate that order. The order was binding and effectual, and could only be got rid of in the mode pointed out in the statute.

Section 13 of the act to which we have referred, Page 148, Scates' Comp., provides, "upon filing an answer, it shall be in order at any time in term, to move for a dissolution of the injunction; and upon that motion it shall be lawful for the parties to introduce testimony to support the bill and answer; the court shall decide such motion upon the weight of testimony without being bound to take the answer as absolutely true." All this is done in court at a regular term, and not at chambers.

The act of 1857, creating the Twentieth Judicial Circuit, (Sess. Laws, Page 17), does not seem to confer the power claimed by

3—38TH ILL.

the appellant, and by the Judge of that Circuit. Section 6 provides that "the Judge of this Circuit shall have power, upon entering the proper order of record during any term thereof, to fix any number of days or terms at which he will hear, at his chambers, general and special motions, arguments on demurrer and arguments upon agreed cases, and for the making of all such interlocutory orders as may be necessary to expedite the proceedings in any cause; and the said court shall always be considered open for the hearing of all matters and applications on the chancery side thereof, and the granting of all such orders as may be required or necessary in the practice of said court."

The last clause here cited evidently contemplates the presence of parties to present matters for hearing, and to make application for such orders as may expedite the causes in which they are entered, pending in court, but does not authorize the Judge, of his own motion, in the absence of the parties, to enter any order in any cause for any purpose. He can only act when acted on by the parties. The Judge's order vacating that of Judge Sheldon, was clearly irregular.

Although it is stipulated that the decision of the Court on this point, shall, if against the Clerk, operate as an affirmance of the judgment of the Winnebago Circuit Court, awarding a peremptory mandamus, we do not feel ourselves bound by such stipulation, for the reason we do not believe that Court, on the disobedience of the Clerk of the Kankakee Circuit Court, had the power to compel him—it had no jurisdiction over that subject, and the consent of parties cannot confer it. The act relating to mandamus does not, in terms, authorize the Circuit Courts to issue that writ to operate beyond the limits of the respective circuits. The only power that could have operated on the Clerk, was the power of the Judge who granted the order for an injunction, to punish the Clerk for a contempt in refusing to issue it, and to hold him in custody until he should comply with the order. To compel him by

mandamus, a resort to this court was necessary, or to the Kankakee Circuit Court, of which he was Clerk.

· The judgment of the Winnebago Circuit Court is reversed.

*Judgment reversed.*